**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-24037-KMM

LIPENG XUE, an individual; MINING DEPOT
USA, INC., a Texas corporation; SY TECH
GROUP INC, a Texas corporation,

        Plaintiffs,

v.

ERIC G. NICOLAIDES, an individual; WML,
LLC, a Florida limited liability company;
WILDCAT INFRASTRUCTURE, LLC, a
Delaware limited liability company; WILDCAT
EQUITY PARTNERS, LLC, a Florida limited
liability company; WILDCAT VENTURE
MANAGEMENT, INC., an Illinois corporation;
WILDCAT PHARMACEUTICALS, an Illinois
corporation; CASSIE ROSE JIMENEZ, an
individual;

        Defendants.
_____/

## FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiffs, LIPWNG XUE ("XUE"), MINING DEPOT USA, INC. ("DEPOT"), and SY

TECH GROUP INC. ("STG INC") (collectively "Plaintiffs"), file suit against Defendants ERIC

G. NICOLAIDES ("E NICOLAIDES"), WML, LLC ("WML"), WILDCAT

INFRASTRUCTURE, LLC ("WIL"), WILDCAT EQUITY PARTNERS, LLC (WEP"),

WILDCAT VENTURE MANAGEMENT, INC. ("WVM"), WILDCAT PHARMACEUTICALS

("WP"), and CASSIE ROSE JIMENEZ ("JIMENEZ") (collectively "Defendants"), and in support

alleges:

**NATURE OF ACTION**

1.      This is an action for damages by Plaintiffs against Defendants arising out of a simple business transaction with frauds committed by Defendants toward Plaintiffs. On behalf of its client, Plaintiffs negotiated a written agreement with WIL to secure a site suitable for crypto mining. As part of their agreement, Plaintiffs made a fully refundable deposit totaling $1,150,000 to an alleged escrow account, WML, designated by WIL and E NICOLAIDES, and allegedly controlled by SETH M. STODDER ("STODDER"). After Plaintiffs performed due diligence on the site, they backed out and duly and timely notified Defendants of their termination. Unfortunately, despite acknowledging that the total refund was due and owing, Defendants have misappropriated the deposit and are unable to provide any portion of the refund. Plaintiffs believe that Defendants used the so-called "site" to induce Plaintiffs to make the deposit, by providing Plaintiffs with forged documents and making material misrepresentations to Plaintiffs.

2.      After Plaintiffs retained counsel and after almost a year of stalling and excuses, Defendants finally refunded a portion of the refund ($590,000), and promised the remaining $560,000 by September 2, 2025. Unfortunately, Defendants once again failed to deliver as they were unable to refund the remaining amount, thereby necessitating the instant lawsuit.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.      This Court has personal jurisdiction over each of the Defendants as they either have their principal place of business within the state of Florida, does business within the state of Florida causing injury to Plaintiffs, or reside in Florida.

4924-1239-4605, v. 1

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

6.     Plaintiff LIPWNG XUE is domiciled in the States of Texas and California.

7.     Plaintiff Mining Depot USA, Inc. is a Texas corporation. XUE is the principal owner of DEPOT.

8.     Plaintiff Sy Tech Group Inc. is a Texas corporation. XUE is a director of STG INC.

9.     Plaintiffs allege on information and belief that Defendant Eric G. Nicolaides is domiciled in and is a citizen  of Broward County, in the State of Florida.

10.     Plaintiffs allege on information and belief that Defendant WML, LLC, is a Florida limited liability company with its principal place of business located in the State of Florida. Plaintiffs are informed and believe and thereon allege that E NICOLAIDES is the sole and managing member of WML and its attorney is STODDER.

11.     Plaintiffs allege on information and belief that Defendant Wildcat Infrastructure, LLC, is a limited liability company formed under the laws of Delaware with a principal place of business in the state of Florida. Plaintiffs are informed and believe and thereon allege that E NICOLAIDES is the sole and managing member of WIL.

12.     Plaintiffs allege on information and belief that Defendant Wildcat Equity Partners, LLC, is a Florida limited liability company with a principal place of business in the city of Miami, state of Florida. Plaintiffs are informed and believe and thereon allege that E NICOLAIDES is the chairman and chief executive officer of WEP and WEP is the parent and holding company of all Wildcat related entities.

13.     Plaintiffs allege on information and belief that Defendant Wildcat Venture Management, Inc. is a corporation with a principal place of business in the city of Chicago, State of Illinois. Plaintiffs are informed and believe and thereon allege that JIMENEZ is the chairman and an officer of WVM.

14.     Plaintiffs allege on information and belief that Defendant Wildcat Pharmaceuticals is a corporation with a principal place of business in the city of Chicago, State of Illinois.

15.     Plaintiffs allege on information and belief that Defendant Cassie Jimenez is domiciled in Broward County, in the State of Florida.  Denise Nicolaides was misnamed in the original Complaint as the proper party is Cassie Jimenez.

## STATEMENT OF FACTS

16.     Plaintiff XUE operates DEPOT, who is a representative of STG, are in the cryptocurrency mining business. XUE is also the director and shareholder of STG.

17.     Mining is the use of Graphics Processing Units ("GPUs") to "mine" proof-of-work cryptocurrencies, such as Bitcoin or other digital currencies. Miners receive rewards for performing computationally intensive work, such as calculating hashes, that amend and verify transactions on an open and decentralized ledger. GPUs can be especially performant at calculating such hashes, but such mining requires significant amount of electricity measured in megawatts ("MW").

18.     STG, together with Plaintiff DEPOT, required a site that was suitable to handle 100MW of power to conduct cryptocurrency mining. XUE is also a principal owner of STG.

19.     In 2024, Plaintiff XUE engaged Chris Chow of Dojinn, LLC, a consulting company that provides energy infrastructure and solutions for companies, to locate a suitable site for STG.

20.     Because Mr. Chow had ongoing projects with E NICOLAIDES and his companies involving energy sites for data centers and crypto mining, Mr. Chow introduced Plaintiffs to NICOLAIDES.

21.     Through several online meetings that occurred in around June 2024, E NICOLAIDES represented to XUE that his company WIL and its partners were developing an energy park based in Festus, MO for crypto-mining (the "Site").

22.     In or around July 2024, E NICOLAIDES represented to XUE in writing and orally that in order to guarantee STG availability of space and power at the Site until more definitive agreements were executed, a refundable deposit would be required along with the execution of a reservation agreement ("Reservation Agreement").   In order to hold the Site for XUE, E NICOLAIDES also required XUE to deposit a $100,000 holding payment, which would be refunded once the Reservation Agreement was executed and the reservation fee received.

23.     On or around June 26, 2024, DEPOT made the initial $100,000 holding payment to WEP, a company controlled by E NICOLAIDES, as a prior attempt by STG to wire the funds through an international wire to the Title Company of Florida Inc. was returned.

24.     On July 5, 2024, WIL and STG INC entered into a Reservation Agreement, where a true and correct copy is attached hereto as Exhibit "1" and incorporated herein by reference.

25.     Pursuant to the Reservation Agreement, WIL was supposed to reserve for STG a 15 acre site that was capable of handling 100MW of power. The reservation period would be from July 5, 2024 to July 31, 2024, and extendable by mutual agreement of the parties.

26.     In exchange, STG INC would pay WIL a "refundable reservation fee" of $1,000,000 via wire transfer to a WML designated escrow account supervised by WIL's alleged counsel, Seth Stodder, a California licensed attorney "STODDER."

27.     Furthermore, the Reservation Agreement provides that STODDER would supervise the collection and the return/refund of the deposit if STG INC no longer desired to proceed with the transaction. Notably, the agreement also requires Wildcat to refund the reservation fee within 30 days of STG INC's notification of termination.  Additionally, the Reservation Agreement clearly indicates that neither party had any obligation to complete the transactions described until definitive agreements were executed.

28.     On July 5, 2024, E NICOLAIDES specifically instructed via an email to XUE to wire the $1,000,000 reservation fee to WML and noted that "our counsel Seth Stodder of WML who [sic] will be handling this." Attached herein as Exhibit "2" is a true and correct copy of E NICOLAIDES' July 5, 2024 email, which included as attachments, the Reservation Agreement and wire instructions.

29.     Because XUE required additional information for his due diligence and WIL needed time to obtain the information, the reservation period was extended by twice and in total, DEPOT deposited a total of $1,150,000 to WML pursuant to E NICOLAIDES', WIL's, WEP's instructions. Notably, in his email attachment, E NICOLAIDES asked that the additional deposits for the extensions be made to the same "escrow" account as before.

30.     During the additional due diligence period, XUE traveled to the Site and was shocked to learn that the owner of the Site had never heard of any of the Defendants and disavowed any knowledge in any pending transactions involving Defendants. XUE, through Mr. Chow, then communicated the above information to E NICOLAIDES. He then offered another site to XUE, but given the troubling revelation, XUE declined and demanded a full refund.

31.     In August 2024, Mr. Chow, acting on behalf of XUE, notified E NICOLAIDES of the termination of the Reservation Agreement and demanded the refund. E NICOLAIDES

informed Mr. Chow that he would cancel the Reservation Agreement and provide the full refund once he received a direct notice from XUE.

32.     On August 23, 2024, XUE formally notified E NICOLAIDES of the cancellation and the demand for the refund.

33.     Although the Reservation Agreement required E NICOLAIDES to refund the amount within 30 days, none of the Defendants did so. Instead, E NICOLAIDES offered excuses after excuses to delay the refund and even claimed that the funds were still in "escrow" but needed WIL's outside counsel form Sidley Austin to release the funds. Attached herein as Exhibit "3" is a true and correct copy of E NICOLAIDES' emails in October 2024 to XUE in this regard.

34.     In an October 14, 2024 email, E NICOLAIDES notified XUE that it was a bank holiday in the United States and that his lawyers were also off, but he would get the monies returned to XUE by "tomorrow."  E NICOLAIDES also asked for XUE's wire instructions, which were immediately provided.

35.     On October 21, 2024, E NICOLAIDES asked additional questions  concerning DEPOT and represented to XUE that these were the last questions and they would be able to release the funds to Plaintiffs "ASAP."

36.     Finally in December 2024, E NICOLAIDES agreed to refund the $1.15 million to XUE on the condition that STG INC[1] and DEPOT execute release agreements.  While there was no requirement or consideration that Plaintiffs sign any further documentation to obtain a refund, Plaintiffs did so relying on E NICOLAIDES' promise that the refund would be timely made thereafter. Consequently, based solely on Defendants' promise that the refund would be made

---

[1] In the STG INC Release Agreement, there is a reference to an entity named "STG LLC", which was an error/mistake made by Defendant Eric Nicolaides. This entity never existed and Plaintiff Xue signed it in error as it was a condition requested by Mr. Nicolaides.

upon the signing of the release agreements, STG INC and DEPOT then signed two separate release agreements with WIL. The DEPOT Release Agreement is attached hereto as Exhibit "4" and incorporated herein by reference and the STG INC Release Agreement is attached hereto as Exhibit "5" incorporated herein by reference.

37.     In the DEPOT Release Agreement, WIL agreed to return the $1.15 million as follows: ten business days following the last date of execution of the DEPOT Release Agreement with $1 million being returned to XUE and $150,000 to DEPOT. E NICOLAIDES signed the DEPOT Release Agreement on December 10, 2024, which meant that the refund would be due by Friday, December 20, 2024.

38.     Unfortunately, none of the Defendants refunded any portion of the reservation fee on December 20, 2024.

39.     On or about April 29, 2025, Defendants' counsel, Mr. Blackburn, conveyed to Plaintiffs' counsel that "Wildcat reported that they did put money into escrow (not with me) and are working to pull the funds together to send to you. Wildcard noted that they would like to avoid arbitration as they believe this can be handled amicably, and offered to provide you with a parent guarantee while the funds are being moved to make payment."

40.     From December 20, 2024 through the date of this Complaint, E NICOLAIDES made further promises to unconditionally refund the money to Plaintiffs, through either text messages or emails. The latest of such promise was to refund the amount by June 2, 2025. Once again, none of the Defendants have refunded any portion of the reservation fee to date.

41.     On June 4, 2025, Plaintiffs' counsel provided written notice to E NICOLAIDES through his counsel, Alfred Southerland, and to STODDER. The Notice was sent pursuant to Fla. Stat. Sec. 772.11 concerning civil theft. A copy of this Notice is attached hereto as Exhibit "6."

42.     In responding to a California State Bar complaint made by XUE against STODDER for mismanaging a client trust account, STODDER reported to the State bar that he had no involvement in the subject transaction, nor did he manage any escrow account related to this transaction. STODDER further indicated that he represents E. Nicolaides in various matters, but not regarding the subject transaction.

43.     After expending significant resources, including attorney's fees, on or about July 2, 2025, E. Nicolaides finally wired a total of $590,000. Through his counsel, E. Nicolaides has promised to pay the remaining balance of the deposit by September 2, 2025.

44.     On September 2, 2025, Defendants were unable to refund the remaining $560,000.

## COUNT I – BREACH OF RESERVATION AGREEMENT
### (By STG INC Against WIL)

45.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

46.     Plaintiff STG INC. and WIL entered into the Reservation Agreement with the effective date of July 5, 2024.

47.     Plaintiff STG INC. has fully performed under the Reservation Agreement or is otherwise excused from performing.

48.      Defendant WIL breached the Reservation Agreement by failing to refund the amount deposited by STG INC.

49.     As a direct and proximate result of WIL's breach, Plaintiff STG INC. has suffered damages.

50.     Plaintiff STG INC. has incurred monetary losses in the amount of at least $560,000, not including fees, costs or interest, as a result of WIL's breach.

WHEREFORE, Plaintiff STG INC. demands judgment against Defendant WIL and that this Court grant compensatory damages of not less than $560,000, prejudgment interest allowable by law, costs, and such other and further relief as is just, fair and proper.

## COUNT II – BREACH OF DEPOT RELEASE AGREEMENT
### (By DEPOT Against WIL)

51.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

52.     Under Federal Rules of Civil Procedure ("FRCP") Rule 8, Plaintiffs plead in the alternative that in the event that the Reservation Agreement is adjudicated to be superseded by DEPOT Release Agreement.

53.     Plaintiff DEPOT and WIL entered into a valid and enforceable written agreement, the DEPOT Release Agreement.

54.     Pursuant to the DEPOT Release Agreement, WIL was supposed to refund $1.15 million to Plaintiffs by December 20, 2024.

55.     In December 2024, WIL breached the DEPOT Release Agreement by failing to refund any portion of the $1.15 million to Plaintiffs.

56.     Plaintiffs have fully performed under the DEPOT Release Agreement or are otherwise excused from performing.

57.     As a direct and proximate result of WIL's breach, Plaintiffs have suffered damages.

58.     Plaintiffs have incurred monetary losses in the amount of at least $560,000, not including fees, costs or interest, as a result of WIL's breach.

WHEREFORE, Plaintiff DEPOT demands judgment against Defendant WIL and that this Court grant compensatory damages of not less than $560,000, prejudgment interest allowable by law, costs, and such other and further relief as is just, fair and proper.

## COUNT III – BREACH OF WRITTEN GUARANTEE AGREEMENT
### (By Plaintiffs against WEP)

59.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

60.     On or about May 5, 2025, E NICOLAIDES stated in writing that WIL's parent company, WEP, had guaranteed the refund of the $1.15 million to Plaintiffs. E NICOLAIDES' counsel, Jonathan Blackburn, made the same representation. True and correct copies of WEP's guarantee are attached hereto as **Exhibit** 7 and incorporated herein by reference.

61.     To this date, other than the $590,000 that was only refunded on July 2, 2025, WIL still has yet to refund remaining amount of the deposit to Plaintiffs and WEP has failed to guarantee the refund. As a result, WEP has breached its written promise to guarantee the refund to Plaintiffs.

62.     Plaintiffs have fully performed under the parties' agreements or are otherwise excused from performing.

63.     As a direct and proximate result of WEP breach of the guarantee, Plaintiffs have suffered damages.

64.     Plaintiffs have incurred monetary losses in the amount of $560,000, not including fees, costs or interest, as a result of WIL's breach.

WHEREFORE, Plaintiffs demand judgment against Defendant WEP and that this Court grant compensatory damages of not less than $560,000, prejudgment interest allowable by law, costs, and such other and further relief as is just, fair and proper.

## COUNT IV – PROMISSORY FRAUD
### (By Plaintiffs against Defendants E NICOLAIDES, WML, WIL, and WEP)

65.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

66.     Defendants E NICOLAIDES, individually, and on behalf of WML, WIL, WEP, WVM and WP ("Wildcat Defendants") made false promises to Plaintiffs regarding material facts.

67.     In around June 2024, each of the Wildcat Defendants represented orally and in writing that they had secured the Site suitable for crypto mining for Plaintiffs or their clients.

68.     In or around June 2024, the Wildcat Defendants promised Plaintiffs orally and in writing that the funds they deposited to WIL would be handled and refunded from agents and investors, and supervised by STODDER and that if the Reservation Agreement is canceled, Plaintiffs would receive a full refund within 30 days.

69.     At the time the Wildcat Defendants made the above promises, they knew the promises were false as Plaintiffs allege on information and belief that: 1) the Wildcat Defendants never planned to secure a Site suitable for Plaintiffs' needs; 2) the Wildcat Defendants never intended to maintain the deposited funds in a trust account managed by STODDER.

70.     On the contrary, the Site's owner stated that he never had any dealings with the Wildcat Defendants, and STODDER was not going to be involved in the subject transaction including managing any of the deposited funds.

71.     Plaintiffs are informed and believe and thereon allege the Wildcat Defendants intended to induce Plaintiffs to rely on these false promises in order to get Plaintiffs to enter into the Reservation Agreement and transfer $1.15 million under their control so that they could use such funds for their own purposes.

72.     In December 2024, the Wildcat Defendants further represented orally and in writing that they would fully refund $1.15 million to the Plaintiffs once Plaintiffs signed a DEPOT and STG INC release agreements.

73.     Plaintiffs are informed and believe and thereon allege that when the Wildcat Defendants entered into the DEPOT and STG INC Release Agreements, they did not have the requite funds to refund to Plaintiffs, hence the Wildcat Defendants had no intention to refund the deposited funds to Plaintiffs.

74.     Plaintiffs are further informed and believe that the Wildcat Defendants intended to induce Plaintiffs to reply on their false promise to refund the deposited funds so that Plaintiffs would sign the DEPOT and STG INC Release Agreements to delay the repayment of the deposited funds and force the Plaintiffs into private arbitration.

75.     Plaintiffs justifiably relied on the Wildcat Defendants' false promises.

76.     In reliance of Defendants' false promises, Plaintiffs entrusted $1.15 million to the Wildcat Defendants.

77.     As a direct and proximate result of their reliance on Wildcat Defendants' false promises, Plaintiffs have suffered damages.

78.     Plaintiffs have incurred monetary losses in the amount of not less than $560,000, not including fees, costs or interest, as a result of their reliance on Defendants' false promises.

WHEREFORE, Plaintiffs demand judgment against Defendants E NICOLAIDES, WML, WIL, and WEP and that this Court grant compensatory damages to be proven at trial, a judicial determination that the Reservation Agreement and release agreements were induced by fraud permitting rescission of said agreements, punitive and exemplary damages in an amount to be proven at trial,  prejudgment interest allowable by law, costs, and such other and further relief as is just, fair and proper.

### Count V – CIVIL THEFT UNDER FLORIDA STATUTE § 772.11
### (By Plaintiffs against E NICOLAIDES, WIL, STODDER, and WML)

79.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

80.     Plaintiffs allege on information and belief that the above Defendants misappropriated $1.15 million belonging to Plaintiffs from the cancelled transaction involving the Site with felonious intent to, either temporarily or permanently, deprive Plaintiffs of the right to those monies in violation of § 772.11, Fla Stat.

81.     Plaintiffs allege on information and belief that each of the Defendants misappropriated the $1.15 million belonging to Plaintiffs which were supposed to remain in escrow until definitive agreements were executed between the parties or the transaction was cancelled.

82.     As a result, Plaintiffs have been damaged and has lost the use, benefit and possession of $560,000, not including fees, costs or interest, due to them under the various written agreements including the Reservation Agreement and the DEPOT Release Agreement.

83.     Prior to filing this suit, Plaintiffs served a written notice under Fla. Stat. § 772.11 demanding payment of three times the amount owed, which totaled $3,450,000 at the time of the letter. While, Defendants refunded $590,000 of the refund, they were unable to return the remaining $560,000.

84.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages and is entitled to attorney's fees, costs, and treble damages of $1,680,000.

WHEREFORE, Plaintiffs demand judgment against Defendants E NICOLAIDES, WIL, STODDER, and WML, treble damages of $1,680,000 under Fla. Stat. § 772.11, attorney's fees

under Fla. Stat. § 772.11, punitive and exemplary damages in an amount to be proven at trial, interest, costs, and such other and further relief as is just, fair and proper.

### COUNT VI – CONVERSION
**(By Plaintiffs against All Defendants)**

85.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

86.     Plaintiffs owned or had the right to possess $560,000, which they entrusted to Defendants for safekeeping until definitive agreements could be executed or the underlying transaction canceled.

87.     Plaintiffs cancelled the underlying transaction.

88.     Defendants wrongfully took possession of Plaintiffs' $560,000.

89.     Defendants took possession of Plaintiffs' $560,000 million through tranches of transfers starting in June 2024.

90.     Defendants have refused to return the $560,000 million to Plaintiffs despite Plaintiffs' demands.

91.     As a direct and proximate result of Defendants' wrongful taking and retention of Plaintiffs' $560,000 million, Plaintiffs have suffered damages.

92.     Plaintiffs have incurred monetary losses in the amount of not less than $560,000, not including fees, costs or interest, as a result of Defendants' conversion of their funds.

WHEREFORE, Plaintiffs demand judgment against Defendants and that this Court grant compensatory damages of not less than $560,000, prejudgment interest allowable by law, costs, punitive and exemplary damages in an amount to be proven at trial, and such other and further relief as is just, fair and proper.

4924-1239-4605, v. 1

## Count VII - Alter-Ego (Pierce the Corporate Veil)
### (By Plaintiffs against the Wildcat Defendants)

93.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

94.     Plaintiffs are informed and believe, and based thereon allege that E NICOLAIDES was and at all relevant times herein were the owners, members, promoters, founders, directors and officers for WIL, WML, and WEP ("Wildcat Entities"). There exists, and at all relevant times herein existed, a unity of interest between E NICOLAIDES and the Wildcat Entities, such that any individuality and separateness between E NICOLAIDES and the Wildcat Entities have ceased, and NICOLAIDES is the alter ego of the Wildcat Entities.

95.     Plaintiffs allege that each of the Wildcat Entities is, and at all relevant times herein were, mere shells and shams without capital, assets, stock or stockholders. Each of the Wildcat Entities was conceived, intended and used by E NICOLAIDES as a device to avoid individual liability and for the purpose of substituting financially insolvent business entities in the place of E NICOLAIDES. At no time after the Wildcat Entities became established was any stock authorized to be issued or issued.

96.     Plaintiffs allege that each of the Wildcat Entities is, and at all relevant times herein was, so inadequately capitalized that, compared with the business to be done by the Wildcat Entities and the risks of loss attendant therein, their capitalization was illusory or trifling.

97.     Plaintiffs allege that each of the Wildcat Entities, at all relevant times herein was, the alter ego of E NICOLAIDES and there exists, and at all times herein relevant has existed, a unity of ownership between E NICOLAIDES and the Wildcat Entities such that any separateness has ceased to exist in that E NICOLAIDES used the assets of the Wildcat Entities for personal

4924-1239-4605, v. 1

uses, caused assets of Wildcat Entities to be transferred to them without adequate consideration, and withdrew funds from the Wildcat Entities' bank accounts for E NICOLAIDES' personal use.

98.     Plaintiffs allege that each of the Wildcat Entities is, and at all relevant times herein was, a mere shell, instrumentality and conduit through which E NICOLAIDES carried on his business in the name of the Wildcat Entities exercising complete control and dominance of the businesses to such an extent that any individuality or separateness of the Wildcat Entities and E NICOLAIDES does not now, and at all relevant times herein, did not exist.

99.     Plaintiffs allege that each of the Wildcat Entities is, and at all relevant times herein, was controlled, dominated, and operated by E NICOLAIDES as his individual business and alter ego, in that the activities of the business of the Wildcat Entities was carried out without holding directors or shareholders meetings, no records or minutes of any corporate proceedings were maintained, and E NICOLAIDES entered into personal transactions with the Wildcat Entities without the approval of other directors, officers or shareholders.

100.     Plaintiffs allege that adherence to the fiction that the Wildcat Entities have a separate existence as entities distinct from E NICOLAIDES would permit an abuse of the corporate privilege by the Wildcat Entities and would sanction fraud in that E NICOLAIDES caused funds that were deposited with WML were transferred and used by E NICOLAIDES and the other Wildcat Entities without any consideration all for the purpose of avoiding and preventing attachment and execution by creditors, including Plaintiffs.

101.     Plaintiffs are informed and believe, and based thereon allege that each of the Wildcat Entities is, and at all times herein mentioned was, a mere shell and sham, without capital, assets, stock, or stockholders. Plaintiffs are further informed and believe, and based thereon alleges

4924-1239-4605, v. 1

that the Wildcat Entities were conceived, intended, and used by E NICOLAIDES as a device to avoid personal liability.

102.    Plaintiffs are informed and believe, and based thereon allege that at all relevant times herein mentioned, the Wildcat Entities were so inadequately capitalized that, compared with its business operations, and the risks of loss attendant thereon, its capitalization was trifling.

103.    Plaintiffs are informed and believe, and based thereon allege that E NICOLAIDES comingled the funds and assets he obtained from Plaintiffs with those controlled by the Wildcat Entities in order to evade payment of obligations owed to Plaintiffs and to assist in evading payments of these obligations.

104.    Plaintiffs are informed and believe, and based thereon allege that E NICOLAIDES is liable for the acts of the Wildcat Entities as alleged in this Complaint, and as their alter ego and that recognition of the privilege of separate existence would promote injustice.

105.    Plaintiffs are informed and believe, and based thereon allege that the actions E NICOLAIDES and the Wildcat Entities, as specifically alleged herein, were operated in an attempt to perpetrate a fraud and wrongdoing upon Plaintiffs, that justice and equity require that they be recognized as alter egos of each other so as to defeat such fraud and unfairness and to compensate Plaintiffs for their damages as more fully set forth herein.

106.    Plaintiffs are informed and believe, and based thereon allege that adherence to the fiction of the separate existence of the Wildcat Entities as entities distinct from E NICOLAIDES would permit an abuse of the corporate privileges and would sanction fraud and/or promote injustice in that Plaintiffs are informed and believe and based thereon allege that E NICOLAIDES used the money converted and withheld from Plaintiffs for their own personal use, without the intention of payment, and with the intention to distribute to themselves and/or other parties without

any consideration, all for the purpose of avoiding and preventing attachment and execution by creditors, including the Plaintiffs.

WHEREFORE, Plaintiffs seek a judicial determination to pierce the corporate veil and find that the individual or entity defendants are the alter-egos of each other for joint and several liability, and such other and further relief as is just, fair and proper.

**COUNT VIII**
**CONSPIRACY TO COMMIT FRAUD,**
**<u>AIDING AND ABETTING FRAUD, AND CONCERTED ACTION</u>**
**(By Plaintiffs against All Defendants)**

107.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

108.    In committing the wrongful acts alleged herein, each of the Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Defendants conspired and aided and abetted each other to defraud the Plaintiffs.  The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Defendants' fraud. The Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by purposefully, recklessly, or negligently to conceal material facts, make materially misleading statements, and violate applicable laws.  Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Defendants acted with actual or constructive knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of its overall contribution to and furtherance of the wrongdoing.  At all times

4924-1239-4605, v. 1

relevant hereto, each of the Defendants was the agent of each of the other Defendants and was at all times acting within the course and scope of such agency.

WHEREFORE, Plaintiffs seek a judicial determination that the Defendants conspired, aided and abetted, and acted in concert with each to commit fraud so that their liability are joint and several, and such other and further relief as is just, fair and proper.

### COUNT IX - DECLARATORY RELIEF
### (By Plaintiffs against all Defendants)

109.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

110.     An actual controversy has arisen and exists between Plaintiffs, on one hand, and Defendants, on the other hand, concerning the validity of certain release agreements entered between STG LLC/INC, on one hand, and WIL, on the other hand. Specifically, WIL, fraudulently induced STG LLC/INC and those associated with them to release all of their claims against WIL and those associated with WIL. Additionally, the release agreement requires the parties to arbitrate the matter through arbitration and apply Texas law.

111.     An actual controversy has arisen and exists between Plaintiffs, on one hand, and Defendants, on the other hand, concerning the validity of certain release agreements entered between DEPOT on one hand, and WIL, on the other hand. Specifically, WIL, fraudulently induced DEPOT and those associated with it to release all of its claims against WIL and those associated with WIL. Additionally, the release agreement requires the parties to arbitrate the matter through arbitration and apply Texas law.

112.     Due to the failure of WIL to refund the $1.15 million, Plaintiffs take the position that the provisions: 1) releasing WIL and its affiliates, 2) choice of law in Texas, and 3) arbitration to be null and void as WIL never refunded the $560,000.

113.     Plaintiffs desire to have a judicial determination of the above issues from this Court.

WHEREFORE, Plaintiffs seek a judicial determination of the applicability of the release, choice of law and arbitration provisions in the release agreements and specifically that they are not enforceable, and such other and further relief as is just, fair and proper.

## COUNT X – IMPOSITION OF CONSTRUCTIVE TRUST
### (By Plaintiffs against All Defendants)

114.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

115.     By virtue of the parties' agreements and their conduct, Defendants, and each of them, agreed to maintain Plaintiffs' monies in an "escrow" account until their underlying agreement could be formalized or the agreement canceled, wherein the Defendants would agree to refund the monies to Plaintiffs.  Instead of maintaining the funds in escrow and refunding the $1.15 million when the transaction was cancelled, Defendants, and each of them, secretly transferred the funds and misappropriated them for their personal usage. The $1.15 million rightfully belongs to Plaintiffs and the Defendants have been unjustly enriched.

116.     These actions have resulted in damage to the Plaintiffs which is irreparable in nature because the Defendants have concealed and have continued to attempt to conceal the whereabouts of the monies. Plaintiffs are informed and believes and thereon alleges that E. NICOLAIDES and D. NICOLAIDES used the funds to purchase their residential property in Broward county, Florida.

117.     Plaintiffs, therefore, seek to impose a constructive trust in the amount of the remaining amount of $560,000 on Defendants' property and assets or however method the funds were transmuted.

4924-1239-4605, v. 1

WHEREFORE, Plaintiffs seek imposition of a constructive trust, injunctive relief to prevent Defendants from dissipating the funds, and such other and further relief as is just, fair and proper.

Respectfully submitted

By:     */s/ Hubert H. Kuo*
        Hubert H. Kuo (Ca. State Bar 204036)
        hkuo@ardentlawgroup.com
        ARDENT LAW GROUP, P.C.
        4340 Von Karman Ave., Suite 290
        Newport Beach, CA 92660
        949-299-0188
        Attorneys for Plaintiffs
        *Admitted pro hac vice*

        and

By:     */s/ Greg M. Popowitz*
        Eric N. Assouline (FBN 106143)
        ena@assoulineberlowe.com
        Greg M. Popowitz (FBN 70313)
        gmp@assoulineberlowe.com
        ASSOULINE & BERLOWE, P.A.
        Miami Tower
        100 SE 2nd St., Suite 3650
        Miami, FL 33131
        305-567-5576
        Attorneys for Plaintiffs