**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-24037-KMM

LIPENG XUE, *et al.*,

Plaintiffs,

v.

ERIC G. NICOLAIDES, *et al.*,

Defendants.
_________________________________________/

**ORDER**

THIS CAUSE came before the Court upon Defendants Eric G. Nicolaides, Wildcat Infrastructure, LLC, Wildcat Equity Partners, LLC, Wildcat Pharmaceutics, and Cassie Rose Jimenez's ("Defendants") Motion to Dismiss or Stay Second Amended Complaint for Damages.[1] ("Mot." or the "Motion") (ECF No. 45). Plaintiffs Lipeng Xue, Mining Depot USA, Inc., and Sy Tech Group Inc. ("Plaintiffs") responded in opposition to the Motion, ("Resp.") (ECF No. 51), and

[1] As an initial matter, the Court STRIKES Defendant WML I, LLC's Motion to Dismiss or Stay Second Amended Complaint, along with briefing related to it. (ECF Nos. 57–59). The Court's Paperless Pretrial Order states as follows: "Multiple Plaintiffs or Defendants shall file joint motions with co-parties unless there are clear conflicts of position. If conflicts of position exist, parties shall explain the conflicts in their separate motions." (ECF No. 4). Neither Motion describes why a conflict of position would exist, with the initial Motion stating only that Defendant WML I, LLC was not a party to that Motion because it had not made an appearance and Plaintiffs opposed remaining Defendants' request for an extension. Mot. at 1 n.1.

Because Defendant WML I, LLC's Motion to Dismiss is in effect identical to the Motion as to the threshold issues the Court considers in this Order, *see generally* Mot.; (ECF No. 57), the Court deems Defendant WML I, LLC to have joined with remaining Defendants' Motion as a matter of judicial economy, to avoid duplicative orders, and to avoid unduly prejudicing Defendant WML I, LLC for its failure to comply with the Court's Pretrial Order.

Defendants replied in support, ("Reply") (ECF No. 54). The Motion is now ripe for review. As set forth below, the Motion is granted in part.

## I. BACKGROUND

This action arises out of a business transaction between Plaintiffs and Defendants. Plaintiffs were in search of a crypto-mining site "that was suitable to handle 100MW of power to conduct cryptocurrency mining." ("Second Amended Complaint" or "SAC") (ECF No. 42) ¶ 17. In searching for such a site, Plaintiffs were first introduced to Defendant Nicolaides in 2024, and he represented that his company and its partners were developing an appropriate "energy park." *Id.* ¶¶ 18–20. Defendant Nicolaides required a refundable deposit and the execution of a reservation agreement in order to hold the site for Plaintiffs. *Id.* ¶ 21 (also requiring $100,000 holding payment that was to be refunded upon receipt of reservation fee and execution of reservation agreement). Defendant Wildcat Infrastructure, LLC ("WIL") and Plaintiff Sy Tech Group Inc. ("STG") entered a reservation agreement on July 5, 2024, pursuant to which WIL would reserve a fifteen-acre site for STG that met Plaintiffs' power needs. *Id.*¶¶ 23–24. In return, STG would provide a refundable reservation fee to a designated escrow account supervised by "WIL's alleged counsel, Seth Stodder." *Id.*¶ 25. The reservation agreement also provides that if STG notifies of its intent to terminate the agreement, it will have its reservation fee refunded within thirty days. *Id.*¶ 26. Plaintiffs ultimately deposited a total of $1,150,000 to the escrow account. *Id.* ¶ 28.

Plaintiff Xue eventually traveled to the site that was the subject of the Parties' deal and "was shocked to learn that the owner of the Site had never heard of any of the Defendants and disavowed any knowledge in any pending transactions involving Defendants." *Id.* ¶ 29. Plaintiff Xue declined Defendant Nicolaides's offer for another site, instead demanding a full refund. *Id.*

Plaintiff Xue formally notified Defendant Nicolaides of the cancellation on August 23, 2024. *Id.* ¶ 31.

After litany delays wherein Defendants did not refund the deposit, Defendants agreed to refund the $1,150,00 on the condition that STG and Defendant Mining Depot USA, Inc. ("Depot") each execute release agreements. *Id.* ¶ 35. STG and Depot each signed release agreements in reliance on the promise that the refund would be timely made thereafter. *Id.* In the Depot Agreement, (ECF No. 42-4), WIL agreed to refund one million dollars to Plaintiff Xue and the remaining deposit to Depot within ten business days of the last execution of the agreement. SAC ¶ 36 (explaining that Defendant Nicolaides signed the agreement on December 10, 2024). Nevertheless, Plaintiffs did not receive any money in the subsequent months. *Id.* ¶¶ 37–41.[2]

Plaintiffs eventually provided notice to Defendant Nicolaides's counsel pursuant to Florida laws concerning civil theft. *Id.* ¶ 40. On or about July 2, 2025, Defendant Nicolaides wired $590,000 to Plaintiffs. *Id.*¶ 42. He promised to pay the remaining balance on or before September 2, 2025. *Id.* He failed to do so. *Id.* ¶ 43. Defendants quickly filed suit in Texas state court that same day, seeking only declaratory judgment (the "Texas Action"). Resp. at 5. Two days later, Plaintiffs first filed suit in this Court. *See generally* (ECF No. 1).

Plaintiffs have twice amended their complaint, and the Second Amended Complaint is operative now. In the Second Amended Complaint, Plaintiffs sue under the following counts: (1) breach of reservation agreement; (2) breach of Debot's release agreement; (3) breach of written guarantee agreement; (4) promissory fraud; (5) civil theft under Florida law; (6) conversion; (7)

---

[2] The Court notes that throughout the Second Amended Complaint, there are references to Defendants not "refund[ing] any portion of the reservation fee to date." *See, e.g.*, SAC ¶ 39. This is clearly incorrect based not just on the Parties' briefing but the Second Amended Complaint itself. *See id.* ¶¶ 2, 42. The Court therefore disregards the allegations that Defendants have not refunded any of the reservation fee as unambiguously false.

alter ego; (8) conspiracy to commit fraud, aiding and abetting fraud, and concerted action; (9) declaratory relief; and (10) imposition of constructive trust. *Id.* ¶¶ 44–116. Defendants' Motion to Dismiss is now before the Court. *See* Mot.

## II. LEGAL STANDARD

### A. Abstention

Under the *Colorado River* doctrine, federal courts are authorized to "dismiss or stay an action when there is an ongoing parallel action in state court." *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (internal quotations and citations omitted). Federal courts may defer to the state court proceedings "under 'limited' and 'exceptional' circumstances." *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976)). A threshold consideration is whether the parallel state action is one involving "substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Pagés Morales,* 368 F.3d 1320, 1331 (11th Cir. 2004).

Courts must next consider six factors in determining whether abstention is appropriate:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1294–95 (11th Cir. 1998) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 16–26 (1983)); *see also Jackson Platts v. General Elec. Cap. Corp.*, 727 F.3d 1127, 1141–43 (11th Cir. 2013) (explaining how to apply each factor).

In evaluating these factors, courts should not treat them like a checklist; rather "a careful balancing of the important factors as they apply in a given case" is proper. *Moses H. Cone*, 460 U.S. at 16. Therefore, the weight of each factor varies depending on the case, and a sole factor

can be the motivating reason for abstention. *Id.* However, federal courts shall heavily favor exercising jurisdiction. *Bell*, 149 F.3d at 1295; *see also Noonan S., Inc. v. Cnty. of Volusia*, 841 F.2d 380, 383 (11th Cir. 1988) ("[D]ismissal of an action in deference to parallel state proceedings is an extraordinary step that should not be undertaken absent a danger of a serious waste of judicial resources."). If the district court decides abstention is proper, it shall stay, not dismiss, the federal case before it. *Moorer*, 374 F.3d at 998.

**B. Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, provides a federal "policy favoring arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). But "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* (citation omitted). Under federal, Florida, and Texas law, a party has a right to arbitrate where: (1) a valid, written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived. *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004); *see also Marine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999); *Wagner v. Apache Corp.*, 627 S.W.3d 277, 282 (Tex. 2018).

The FAA provides that pre-dispute agreements to arbitrate "evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Confronted with a facially valid arbitration agreement, "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985). Thus, if the aforementioned criteria are met, the Court is required to issue an order compelling arbitration. *See John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 et seq., a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."); *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) ("The role of the courts is to rigorously enforce agreements to arbitrate.").

A motion to compel arbitration is treated generally as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See, e.g.*, *Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526 at *2 n.3 (S.D. Fla. Mar. 7, 2013). Accordingly, the Court may consider matters outside the four corners of the complaint. *Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009).

## III. DISCUSSION

Defendants request, among other things, that the Court abstain from hearing this case until the Texas Action is resolved or, in the alternative, compel arbitration. Mot. at 9–11. While the Motion also argues for dismissal of individual counts of the SAC, the Court first addresses the abstention and arbitration questions and only reaches the remaining arguments if necessary. *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 876 (11th Cir. 2005) (explaining that court must decide arbitration question before considering merits of motion to dismiss); *Tenet*

*v. Doe*, 544 U.S. 1, 6 n.4 (2005) (explaining abstention issue is a threshold matter to be resolved before addressing merits of a claim).

**A. Abstention**

Defendants argue that the Court should abstain from hearing this case because there is a parallel action pending in state court. Mot. at 9. To determine whether abstention pending disposition of a parallel state court case is proper, the Court must analyze this case under the *Colorado River* doctrine. *See Moorer*, 374 F.3d at 997. A defendant seeking abstention under *Colorado River* bears a heavy burden. *Scottsdale Ins. Co. v. Granada Ins. Co.*, No. 18-cv-21207, 2018 WL 7917049, at *4 (S.D. Fla. July 13, 2018) (citing *Schmidt v. Verascomp, Inc.*, No. 08-060084-CIV, 2008 WL 11331749, a *1 (S.D. Fla. July 30, 2008)); *see also Ambrosia Coal*, 368 F.3d at 1331 (explaining defendants bear burden of showing exceptional circumstances warrant "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it"). Defendants' Motion argues abstention is required because "the court most closely connected to the contractual dispute and governing law should proceed first." Mot. at 9. Further, they argue abstention is proper because "[t]he dispute centers on Texas conduct, Texas parties, Texas-governed contracts, and an arbitration clause that mandates arbitration in Texas under Texas law." *Id.* at 10. Therefore, they argue, it "makes eminent sense" for this Court to allow the state court to rule first. *Id.*

While Defendants' arguments are taken into consideration, the Court finds there are not exceptional circumstances warranting abstention under *Colorado River* here. In fact, the Eleventh Circuit "has stated in no uncertain terms that abstention under *Colorado River* is rarely justified[.]" *Schmidt*, 2008 WL 11331749, at *1 (citing *Ambrosia Coal*, 368 F.3d at 1331). Further, "the vexatious or reactive nature of either the federal or the state litigation may influence the decision

whether to defer to a parallel state litigation under *Colorado River*." *Moses H. Cone*, 460 U.S. at 17 n. 20.

The Court finds abstention is not proper here. For one, the timing of the Texas Action, which Defendants instituted on the day they had promised to repay Plaintiffs, SAC ¶¶ 42–43; Resp. at 5, compels the Court towards a finding that Defendants instituted said action for the purpose of preempting a lawsuit by Plaintiffs. Even without considering this intent, however, the Court finds that Defendants clearly failed to meet the heavy burden justifying abstention. Defendants' briefing regarding abstention is exceedingly sparse, only arguing that "[e]very relevant consideration is present" and that abstention "makes eminent sense." Mot. at 10. While they briefly reference many of the factors the Court would properly consider, Defendants do little to meet their burden of showing that proceeding here would risk "a serious waste of judicial resources." *Cnty. of Volusia*, 841 F.2d at 383.

The Court also finds that Defendants have not indicated that the Texas Action is so advanced to risk the creation of piecemeal litigation that would justify abstention. In fact, the instant action is itself advanced, with Plaintiffs having moved for summary judgment and the Parties seeking to mediate by the end of October 2026. *See* (ECF No. 65); (ECF No. 80) at 2. Given the relatively advanced posture of this case, the lack of information provided by the Parties as to the Texas action, and Defendants' failure to meet their heavy burden of showing exceptional circumstances, the Court finds that abstention is not proper pursuant to *Colorado River*.

**B. Arbitration**

Defendants argue that the Court should compel arbitration of all claims based on arbitration provisions in the Parties' reservation agreement and the release agreement with Depot. Mot. at 10. In the reservation agreement, signed by Defendant Nicolaides on behalf of WIL and by

Plaintiff Xue on behalf of STG, the Parties "agree that any and all disputes arising out of the terms of this Agreement or the transactions, their interpretation, and any of the matters herein, shall be subject to arbitration[.]" (ECF No. 42-1) at 4 (formatting altered). In the Depot Agreement, Depot and Plaintiff Xue agree with WIL that "any and all disputes arising out of the terms of this agreement, their interpretation, and any of the matters herein released, shall be subject to arbitration[.]" (ECF No. 42-4) at 2. Defendants argue the language in the Depot Agreement broadly covers all of the claims Plaintiffs bring here, because they all "arise[] from the same contractual relationship and the alleged failure to refund reservation funds governed by the agreements." Mot. at 11.

In response, Plaintiffs argue that Defendants waived their right to arbitrate by filing the Texas action. Resp. at 8–9. Next, Plaintiffs argue that they did not voluntarily agree to arbitrate because they were fraudulently induced into signing the Depot Release which contains an arbitration provision. *Id.* at 9.[3] Further, Plaintiffs argue that the reservation agreement cannot compel arbitration because one of the releases states the reservation agreement was only signed by Defendant Nicolaides. *Id.* Finally, Plaintiffs argue that the releases are null and void based on Defendants' failure to perform. *Id.*

In the Reply, Defendants argue they have not waived their right to arbitrate because "[f]iling a declaratory judgment action to determine the scope and enforceability of arbitration provisions (especially when arbitration has not even been initiated) does not constitute waiver." Reply at 4.

[3] Plaintiffs argue that their Second Amended Complaint containing the fraudulent inducement arguments must be taken as true at this stage of litigation. Resp. at 9. The Court's decision on the fraudulent inducement issue is not related to any factual determination of whether there was fraudulent inducement; instead, the Court decides whether fraudulent inducement of the underlying contract is grounds to deny a motion to compel arbitration to begin with.

The Court first considers Plaintiffs' argument that because they were fraudulently induced into the Depot Agreement, it is not valid and cannot be the basis for arbitration. Resp. at 9. The Court finds that Plaintiffs allege Defendants fraudulently induced them into entering the Depot Agreement as a whole, not specifically the arbitration agreement therein. SAC ¶ 73. It is well-established that where allegations of fraudulent inducement are aimed at the formation of the agreement as a whole and not specifically at the arbitration provision, such allegations "must be presented to the arbitrator for resolution." *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1208 (11th Cir. 2015) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967)). In fact, even where the alleged fraud induced both the whole contract *and* the agreement to arbitrate, the Supreme Court "nonetheless require[s] the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010). Therefore, the Court finds Plaintiffs' argument that its fraudulent inducement allegations defeat arbitration to be unavailing.

Next, the Court finds Defendants have not waived their right to arbitrate. Though the right to arbitration can be waived, "federal law favors arbitration [and] any party arguing waiver of arbitration bears a heavy burden of proof." *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (per curiam). To determine whether a waiver has occurred, the Court considers "whether 'under the totality of the circumstances, the party has acted inconsistently with the arbitration right.'" *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (quoting *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315–16 (11th Cir. 2002)). "A key factor in deciding this is whether a party has 'substantially invoke[d] the litigation machinery prior to demanding arbitration.'" *Id.* (quoting *S & H Contractors v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990)); *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022)

(holding that courts should not consider prejudice but may still inquire whether party seeking to compel arbitration has knowingly relinquished that right by acting inconsistently with it).

The Court agrees with Defendants that their decision to initiate the Texas Action—which seeks declaratory judgment clarifying, among other questions, whether the Parties' claims are subject to arbitration—does not constitute waiver. *See* Resp. at 5; (ECF No. 45-1) ¶ 50 (requesting the Texas court give declaratory judgment with respect to "the scope and effect of the agreements to arbitrate"). That Defendants filed suit in Texas to clarify their rights does not serve as waiver of the right to arbitrate. *See Falvo v. Atl. Specialty Ins. Co.*, No. 8:24-cv-01412, 2025 WL 278022, at 3–4 (M.D. Fla. Jan. 23, 2025) ("Plaintiff has not waived his right to arbitrate by filing suit for declaratory judgment."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842, 845 (2d Cir. 1977) (explaining that commencement of litigation alone does not constitute waiver of the arbitration right); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 96 (4th Cir. 1996) (finding that party's two declaratory judgment actions did not waive its right to arbitrate); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (holding that filing suit does not constitute waiver of arbitration rights). Under the totality of the circumstances, the Court finds that Defendants have acted consistently with their right to arbitrate by (1) seeking to clarify that right; (2) moving to compel arbitration in this action; (3) declining to participate in discovery in this action and requesting that the action be stayed until either this Court or the Texas court determines whether the Parties are subject to arbitration, (ECF No. 46) at 1–2; (4) re-invoking the right to arbitrate in its opposition to Plaintiffs' motion for summary judgment, (ECF No. 78) at 2; and (5) seeking to compel arbitration in an earlier, mooted motion to dismiss, (ECF No. 31) at 13. Finally, the Court notes that even in the Texas Action, Defendants requested that court declare "the claims are subject to arbitration in Harris County, Texas." (ECF No. 45-1) ¶ 57(g). In light

of these considerations and the Court's familiarity with the Parties' conduct[4], the Court finds that Defendants have acted consistently with their right to arbitrate.

Finally, Plaintiffs make two underdeveloped arguments: (1) that Defendants cannot prove Plaintiffs agreed to arbitrate based on the reservation agreement, because "a recital in one of the releases specifically states that only [Defendant Nicolaides] signed the Reservation Agreement" and (2) that the release agreements are both null and void based on Defendants' failure to perform under the releases, freeing Plaintiffs of needing to arbitrate based on the releases. Resp. at 9. Courts may disregard arguments that are not properly presented. *Resol. Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it[.]"); *see also Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1352 (11th Cir. 2009) (explaining that courts need only consider argument that is "adequately presented unless it was raised in a way that the district court could not misunderstand it"). The Court finds these arguments are inadequately presented and may be disregarded.

Even if attempting to construct an argument out of Plaintiffs' briefing, the Court finds both arguments are unavailing. That Plaintiffs allege Defendants have not met their end of the deal in the release agreements does not strip this Court of its right to compel arbitration pursuant to the mandatory arbitration provision in said agreements. *See Rent-A-Center*, 561 U.S. at 70–71 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."); *see*

---

[4] This includes Defendants declining to schedule mediation in this matter until the arbitrability issues were resolved, (ECF No. 73-2) at 2, leading to Plaintiffs filing a Motion for Sanctions. (ECF No. 65).

*also Ivax Corp.*, 286 F.3d at 1319 ("A breach alone, however, cannot rise to the level of waiver; otherwise, parties would never arbitrate contract disputes."). Therefore, Defendants may compel arbitration pursuant to the release agreements, even if Plaintiffs argue they have breached said agreements.

This renders moot Plaintiffs' argument regarding the reservation agreement. The Court cannot clearly parse Plaintiffs' argument regarding the reservation agreement, as they seem to be arguing they are not bound by it due to a line in a separate contract stating the reservation agreement was signed only by Defendant Nicolaides. However, the reservation agreement is clearly signed by Defendant Nicolaides and Plaintiff Xue. *See* (ECF No. 42-1) at 5. Further, Plaintiffs bring suit specifically for breach of the reservation agreement. SAC ¶¶ 44–49. Therefore, they seem to acknowledge it is binding. Therefore, the Court finds that Plaintiffs' arguments pertaining to the reservation agreement are also unavailing.

As such, and with unambiguously mandatory arbitration provisions, the Court finds that it lacks subject matter jurisdiction and that the Parties must arbitrate this dispute.[5]

## IV. CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND

---

[5] The Court notes that Plaintiffs do not argue that any of their claims are non-arbitrable or are beyond the scope of the arbitration agreement. *See generally* Resp. Given this concession, the breadth of the arbitration clauses in both the reservation agreement and the release agreements, and the fact that Plaintiffs' Second Amended Complaint brings claims arising out of these contracts, the Court finds that each of the Counts in Plaintiffs' Second Amended Complaint is arbitrable. *Usai v. Club Mgmt. Miami II, LLC*, 801 F. Supp. 3d 1295, 1305 (S.D. Fla. 2025) (explaining arbitrable issue must exist to compel arbitration); *see also Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 386 (11th Cir. 1996) (holding that fraud, other tort, and breach of contract claims all fell within the scope of an arbitration provision requiring arbitration of "any dispute" between the parties.").

ADJUDGED that Defendants' Motion at (ECF No. 45) is GRANTED IN PART. The case is hereby STAYED pending the outcome of the Parties' arbitration proceedings. The Clerk of Court is ORDERED to ADMINISTRATIVELY CLOSE this case. All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of September, 2026.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record